**Ed HARWIN, Plaintiff–Appellee,**

v.

**GOLETA WATER DISTRICT,
Defendant–Appellant.**

No. 90–55105.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1990.

Decided Dec. 30, 1991.

Robert E. Goodwin, Russell R. Ruiz, Santa Barbara, Cal., for defendant-appellant.

Thomas D. Wise, Hatch and Parent, Santa Barbara, Cal., for plaintiff-appellee.

Before FERGUSON, NORRIS and THOMPSON, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

We consider whether the Goleta Water District may, consistent with the First Amendment, disqualify a board member from considering a water service application if she has received a $250 campaign contribution from the applicant, but not if she has received a $250 campaign contribution from an opponent of the application.

I

In 1973, faced with an emergency water shortage, the Water District imposed a moratorium on new water connections. To be exempted from this moratorium, property owners must seek a waiver from the Water District's Board of Directors. In 1988, seeking to avoid corruption and the appearance of corruption in the water service application process, the Water District and its resident voters implemented an ordinance that prevented any member of the Water District's Board of Directors from considering the water service application of any person who contributed $250 or more to that member's election campaign. The ordinance does not require the disqualification of a board member who has received a contribution of $250 or more from a person opposing a particular application for water service.

Ed Harwin, a real estate developer, brought this civil rights action against the Water District and its Board of Directors, contending that the ordinance violated his First Amendment, substantive due process, and equal protection rights. The district court entered summary judgment for Harwin on the ground that the ordinance violated the First Amendment.

■ We review a summary judgment *de novo*. *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir.1985). Under Fed. R.Civ.P. 56(c), we must decide whether the record, read in the light most favorable to the non-moving party, establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

II

■ It is undisputed that the Water District's campaign contribution limitation burdens the First Amendment rights of contributors. *See Buckley v. Valeo*, 424 U.S. 1, 22, 25, 96 S.Ct. 612, 636, 637, 46 L.Ed.2d 659 (1976) (campaign contribution limits burden contributors' freedom of political association).[1] Furthermore, the ordinance,

---

1. The parties refer to the disqualification provision as a contribution limitation. Technically, the ordinance does not limit the amount anyone may contribute to a candidate for the board. However, by requiring disqualification of a board member who has received a contribution of $250 or more from an applicant, the ordinance provides a powerful disincentive for potential applicants to make such contributions. A potential applicant must either limit his contributions or face the disqualification of directors whose views he supports. Thus, we agree with the parties that it is appropriate to characterize the disqualification provision as a contribution limitation.

In his dissent, Judge Ferguson asserts that the disqualification provision is not a contribution limitation because it "provides no disincentive for persons to contribute to Board members in furtherance of their constitutionally protected rights of political expression and association; it only operates to prevent bribery." Dissent at 494. The dissent appears to misread *Buckley* as holding that some campaign contributions are not protected by the First Amendment. However, *Buckley* did not hold that campaign contributions are not protected First Amendment activity, even when they lead to corruption and the appearance of corruption. Rather, the Court held that the government's interest in preventing corruption and the appearance of corruption is sufficiently important to justify the burdening of protected First Amendment activity. *See Buckley*, 424 U.S. at 25–27, 96 S.Ct. at 637–39. That an ordinance burdening First

by its own terms, burdens only the First Amendment rights of applicants for water service.[2]

The Supreme Court has consistently held that discrimination in the First Amendment context is permissible only when the government can show that the discrimination is itself necessary to serve a substantial governmental interest. "[T]he crucial question is whether there is an appropriate governmental interest suitably furthered *by the differential treatment." Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972) (emphasis added); *see also Austin v. Michigan Chamber of Commerce,* 494 U.S. 652, 110 S.Ct. 1391, 1401–02, 108 L.Ed.2d 652 (1990); *Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 229, 107 S.Ct. 1722, 1727, 95 L.Ed.2d 209 (1987); *Minneapolis Star v. Minnesota Commissioner of Revenue,* 460 U.S. 575, 591, 103 S.Ct. 1365, 1375, 75 L.Ed.2d 295 (1983); *Carey v. Brown,* 447 U.S. 455, 465, 100 S.Ct. 2286, 2292, 65 L.Ed.2d 263 (1980).[3]

 In the instant case, the Water District asserts that its contribution limitation is aimed at curbing corruption and the ap-

pearance of corruption.[4] The Supreme Court has long recognized that this interest may justify non-discriminatory contribution restrictions. *Austin,* 110 S.Ct. at 1397; *Buckley,* 424 U.S. at 26, 96 S.Ct. at 638. However, the Water District has not shown that the distinction drawn by its ordinance between applicants and opponents of water service applications serves to prevent corruption and the appearance of corruption.

While a particular applicant may have a more direct financial stake in the granting of an exemption from the moratorium than non-applicants have in its denial, there is no basis for believing that this is always the case. An owner of property may have as much of a financial interest in opposing water service for his neighbor's property as the neighbor has in obtaining it. The availability of water creates the potential for development that could be detrimental to the value of surrounding property, whether by destroying open space, cutting off views, establishing a competitive business, or otherwise. Moreover, persons with environmental rather than economic interests in mind may also be inclined to make campaign contributions to try to in-

Amendment rights is narrowly drawn to prevent corruption and the appearance of corruption may allow the ordinance to survive constitutional scrutiny under *Buckley,* but it does not place the ordinance outside the ambit of *Buckley* altogether.

2. "No member of the Board of Directors of this District shall participate in any hearing or vote upon an application for water service ... made by a major political contributor to his campaign." Ordinance at § 1. In other words, a director is disqualified if (1) a person contributes $250 to his campaign and meets the other requirements to become a "major political contributor," and (2) that person makes an application for water service. The plain words of the ordinance require disqualification only when the major political contributor is an *applicant.* A director is not disqualified if he has received a contribution from a "major political contributor who opposes an application for water service."

Contrary to the dissent's assertion, *see* dissent at 495, § 9.3 of the ordinance does not extend the disqualification provision to opponents of a particular water service application. Section 9.3 merely defines "major political contributor" to include anyone who makes a contribution "for the purpose of financial gain." Ordinance

at § 9.3. However, no matter how broadly "major political contributor" is defined, § 1 still requires disqualification of a director only when one of his "major political contributors" is the applicant.

3. Discrimination in the First Amendment context has sometimes been characterized as a violation of the First Amendment itself, *see Arkansas Writers' Project,* 481 U.S. at 227 & n. 3, 107 S.Ct. at 1727 & n. 3; *Carey,* 447 U.S. at 471, 100 S.Ct. at 2296 (Stewart, J., concurring); *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 785–86, 98 S.Ct. 1407, 1420–21, 55 L.Ed.2d 707 (1978); *Buckley,* 424 U.S. at 48–49, 96 S.Ct. at 648–49, and has sometimes been characterized as a violation of the Equal Protection Clause, *see Austin,* 110 S.Ct. at 1401–02; *Carey,* 447 U.S. at 461–62, 100 S.Ct. at 2290–91; *Mosley,* 408 U.S. at 94–95, 92 S.Ct. at 2289–90. Under either analysis, however, independent justification of the discrimination is required.

4. The preamble of the ordinance confirms this claim, reciting that the purpose is "to reasonably limit campaign contributions ... for purposes of financially motivated gain from investment in real estate development by means of securing water service from [the] District."

fluence the votes of board members.[5] Thus, while the Water District's interest in preventing corruption and the appearance of corruption might justify a non-discriminatory contribution limitation, it does not justify the discriminatory contribution limitation at issue in this case.

*Mosley* is analogous to the instant case. In *Mosley* the Supreme Court struck down a Chicago ordinance that prohibited picketing on school grounds except for labor picketing. The *Mosley* Court recognized that Chicago could legitimately "prohibit[ ] some picketing to protect public order," 408 U.S. at 98, 92 S.Ct. at 2291, and that "[c]ities certainly have a substantial interest in stopping picketing which disrupts a school." *Id.* at 99, 92 S.Ct. at 2292. However, the critical question was whether the distinction between labor and non-labor picketing furthered this legitimate interest. The Court held that it did not, because Chicago had not shown that non-labor picketing was "clearly more disruptive" than labor picketing. *Id.* at 100, 92 S.Ct. at 2292. In the instant case, the Water District has not shown that the danger of corruption is greater when the contribution is from an applicant than it is when the contribution is from an opponent of an application. We hold, therefore, that the ordinance violates the Constitution.[6]

## III

We emphasize, however, the limited nature of our decision. The district court's rationale is more expansive than the evidence in the record can support. The district court concluded that the ordinance would have the effect of decreasing the political voice of one side of the debate over growth within the district. However, there is no evidence to show that by limiting the contributions of those who apply for water service the Water District was unevenly burdening advocates of growth. Nor is a no-growth bias apparent on the face of the ordinance. It is certainly possible for a person to seek water service to develop his own land but oppose growth in general. The district court's conclusion about the impact of the ordinance on the debate over growth has no basis in the evidentiary record.

The district court also ruled that the ordinance was "overbroad" because the disqualification of a board member denied representation to constituents of that board member even if they had not made a major contribution. However, there is no evidence in the record about the impact of disqualification on the representation of the Water District's residents. The grant of summary judgment cannot, therefore, be supported on the ground that the ordinance

---

**5.** Judge Ferguson objects to our "lumping" contributors who have non-financial interests together with contributors whose interests are financial. Dissent at 495. However, it is not the existence of a financial interest that defines corruption, but rather the existence of "a political *quid pro quo* from current and potential office holders." *Buckley,* 424 U.S. at 26, 96 S.Ct. at 638. In other words, it is the connection between a contribution and a political favor that makes a contribution corrupt, not the nature of the political favor.

**6.** Whether analyzed under the First Amendment or under the Equal Protection Clause of the Fourteenth Amendment, *see supra* note 3, discriminatory burdens on First Amendment rights have typically been subjected to strict scrutiny. *Austin,* 110 S.Ct. at 1401 (discriminatory classification "must be narrowly tailored to serve a compelling governmental interest"); *Arkansas Writers' Project,* 481 U.S. at 231, 107 S.Ct. at 1729 ("In order to justify ... differential taxa-

tion, the State must show that its regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end."); *Mosley,* 408 U.S. at 101, 92 S.Ct. at 2293 (Equal Protection Clause requires that distinctions among speakers be "narrowly tailored to their legitimate objectives."). While it is conceivably arguable that a lower level of scrutiny should apply to discriminatory contribution limits because contribution limits are subject to a lower level of scrutiny than expenditure limits, *see Buckley,* 424 U.S. at 20–21, 23, 96 S.Ct. at 635–36, 637, we need not decide this question today. The standard of review for contribution limits is a "rigorous" one, *id.* at 29, 96 S.Ct. at 640, which requires the government to "demonstrate[ ] a sufficiently important interest and employ[ ] means closely drawn to avoid unnecessary abridgment of associational freedoms." *Id.* at 25, 96 S.Ct. at 638. Thus, under either strict scrutiny or the "rigorous" standard of *Buckley,* the Water District must show that a substantial governmental interest is served by the discrimination.

denies representation to residents of the district.

We affirm the grant of summary judgment on neither of these grounds, but rather because the ordinance restricts the contributions of applicants without restricting contributions from opponents of the same applications. On this narrow issue, there was no triable issue of material fact and Harwin is entitled to judgment as a matter of law.

## IV

For the reasons stated herein, the summary judgment is AFFIRMED. As the prevailing party on appeal, Harwin is entitled to attorneys' fees pursuant to 42 U.S.C. § 1988.

FERGUSON, Circuit Judge, dissenting:

Regretfully, I must conclude from the majority opinion that:

1. The majority fails to understand the distinction between the corruption of public officials and political activism.

2. The majority protects, under the mantle of the First Amendment, the corruption of public officials because true First Amendment rights are not curtailed.

3. The majority ignores the Supreme Court's mandate in *New York v. Ferber*, 458 U.S. 747, 765, 102 S.Ct. 3348, 3359, 73 L.Ed.2d 1113 (1982), that "there is nothing unconstitutionally 'underinclusive' about a statute that singles out" for proscription conduct or speech that is not protected by the First Amendment.

I therefore dissent from the majority's use of the First Amendment as a weapon to strike down legislation fundamental to democracy, an ordinance prohibiting the payment of money to government officials for the purpose of direct financial gain.

## I

Water is essential to life and civilization. Where water is scarce, access to water is a valuable financial asset. This is common knowledge in the Goleta Water District, which, like much of the rest of California, suffers from a drought. *See* Maria L. La-Ganga, *Goleta Initiates Plan to Import Canadian Water*, Los Angeles Times, Mar. 16, 1991, at A1.

In 1973, in response to a severe water shortage, the voters of the Goleta Water District adopted an initiative measure that imposed a moratorium on new water service connections. Property owners seeking to develop their properties apply to the district's Board of Directors for an exception to the moratorium, which the Board may grant or deny.

Water is a prerequisite for enterprise in the Goleta Water District. Without a supply of water, property owners cannot build and their properties cannot generate income. Hence, a property owner to whom the Board grants water service receives an enormous, direct financial benefit. In 1988, to prevent the undue influence or appearance of undue influence of Board members for the purpose of such financially motivated gain, the Board of Directors adopted Resolution 88–1. The provisions of the Resolution were enacted by the voters in the November 1988 election, as measure L, and became the ordinance at issue in this case.[1] The ordinance declares:

C. The District desires to insure that [the process of granting exceptions to the moratorium] is administered in an open and unbiased manner free from undue influence, or the appearance of undue influence, of major political contributions to the election campaigns of the Board members.

D. It is not the intention of the District hereby to restrict political activity, freedom of speech or freedom of association of any person or entity desiring to make a political contribution to an election for District office. It is the intention to reasonably limit campaign contributions of those persons or entities whose contributions create the appear-

---

1. The ordinance was enacted pursuant to authorization provided by California Elections Code § 23,544, by which "a governing body of a district may by resolution limit campaign contributions in elections to district offices."

ance of undue influence or corruption of the political process for purposes not of political expression, but for purposes of financially motivated gain from investment in real estate development by means of securing water service from District.

E. The established law is clear that there is no state or federal constitutional right to water service from the District for purposes of real estate development. This measure is intended to reasonably restrict (but not prohibit) campaign contributions made by persons in furtherance of that constitutionally unprotected interest, while leaving unrestricted campaign contributions made by persons in furtherance of their constitutionally protected rights of speech and association. It is the intention of the District to narrowly draw these restrictions to effectuate these purposes and distinctions.

In sum, the ordinance states that its purpose is to prevent corruption and the appearance of corruption. Specifically, the ordinance seeks to address campaign contributions which are made, or appear to be made, solely for the purpose of financial gain from real estate development by means of securing water service from the District. The ordinance does not seek to regulate contributions made by persons in the exercise of their constitutionally protected rights of expression and association.

In furtherance of its goal, the ordinance provides:

1. *Disqualification of Directors on Applications by Major Political Contributions.*

No member of the Board of Directors of this District shall participate in any hearing or vote upon an application for water service of any kind or for the assumption of responsibility for a private or mutual water system made by a major political contributor to his campaign.

The ordinance defines a "major political contributor" as a person or entity who donates more than $250.00.[2] It also requires that, to trigger application of the ordinance, the contributor either own property within the District or be otherwise situated to reap direct financial gain from the grant or denial of a particular application for water service:

9.2. *Required Interest in Real Estate.*

... [I]n order to be considered a major political contributor, any such person or entity must own, possess an option or right to acquire one or more parcels of real property within the District which are eligible under District rules, regulations and ordinances for new, additional or expanded water service from District at the time of making the contribution and who subsequently applies for water service from the District to the same or other parcels within the District. The eligibility requirement refers to circumstances where an application may be filed and the Board of Directors exercises its discretion under its rules, regulations and ordinances to grant, deny or modify such water service application.

9.3. *Other Facts Indicating Financial Interest.*

... Any other such person or entity shall be considered a major political contributor where the facts and circumstances reasonably demonstrate that the campaign contribution was made for the purpose of financial gain and not primarily for purposes of first amendment political expression, speech or association.

The plaintiff in this case is a real estate developer in the District bringing a civil

---

2. The ordinance reads:

8. *Definition: Major Political Contribution: $250.00.*

A major political contribution is a donation or donations of cash or anything of value (excluding volunteer work) totalling in excess of $250.00 made to a director or candidate for director or to any person or committee which at that time was acting in and of the election of a candidate for director who is elected, or in case of a recall election, retained in office, with respect to any single election at any time during a period of nine months prior to the commencement of the term of office for which the election is held; and any such contribution during the term of office of any such director. Any such contribution which is returned within one week after receipt shall be disregarded.

rights action under 42 U.S.C. § 1983, contending that the ordinance violates his First Amendment, substantive due process, and equal protection rights. The district court granted summary judgment without an evidentiary hearing, and held that the ordinance, on its face, violated the plaintiff's First Amendment rights.

Today the majority affirms the grant of summary judgment on the ground that the ordinance discriminates between applicants for water service and their opponents. The majority concludes that the ordinance is unconstitutional because it does not burden the First Amendment rights of all contributors. The majority reaches this incomprehensible result by misstating the facts of the case and misapplying First Amendment law.

## II

The majority asserts that the ordinance burdens the First Amendment rights of contributors, relying on *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1975). The majority is wrong. *Buckley* holds that campaign contribution and expenditure limitations infringe, in varying degrees, upon freedoms of political expression and association protected by the First Amendment. *Id.* at 23, 96 S.Ct. at 636. But *Buckley* does not govern the case before us today.

*Buckley* involved a flat, across-the-board cap on campaign contributions, which the Court sustained because the limitation was closely drawn to serve a sufficiently important governmental interest. *Id.* at 25, 96 S.Ct. at 637. The measure at issue in today's case disqualifies a Board member from voting on an application for water service when a person or entity with a direct financial interest in that vote has made a major contribution to the Board member's campaign. It does not in any way prohibit or limit contributions.

The majority acknowledges in a footnote that "[t]echnically, the ordinance does not limit the amount anyone may contribute to a candidate for the Board." Majority Opinion at 489 n. 1. The majority then dismisses the issue by pointing out that the ordi-

nance provides a "powerful disincentive" for affected persons to pay money to Board members who will vote on their applications (or applications in which they have a direct financial interest). But the majority fails to examine the nature of this "disincentive." Without more, a disincentive to contribute does not magically transform a disqualification provision into a contribution limitation. The Goleta Water District ordinance provides no disincentive for persons to contribute to Board members in furtherance of their constitutionally protected rights of political expression and association; it only operates to prevent bribery or the appearance of bribery. A person can contribute as much as he wishes to a candidate whose views he supports. He simply cannot contribute a large sum that is, or appears to be, a *quid pro quo* for the candidate's vote on an application which he supports or opposes because of a direct financial interest.

## III

The majority accurately notes that the disqualification measure's purpose is to prevent corruption and the appearance of corruption, and that the Supreme Court has held that this is a legitimate and compelling governmental interest. *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 110 S.Ct. 1391, 1397, 108 L.Ed.2d 652 (1990); *Buckley*, 424 U.S. at 26–27, 96 S.Ct. at 638–39. However, the majority neglects to note more precisely that the ordinance addresses corruption in a particular context: where a person "contributes" a large sum to a public official in exchange for an act, in this case a vote for or against an application, that will confer upon him a direct financial benefit. The ordinance does not seek to regulate every situation in which a person contributes money in the vague hope of influencing a Board member. To attempt to do so would be to toe the delicate line between protected and unprotected conduct, and risk burdening the former. Many contributions are made with the intent to encourage a public official to act in ways that will ultimately benefit the contributor, and not all of these contribu-

tions constitute bribery. The Supreme Court has attempted to distinguish between bribery and contributions made for general goodwill or a vague expectation of benefit by holding that bribery requires proof of a *quid pro quo. McCormick v. United States,* — U.S. —, 111 S.Ct. 1807, 1816–17, 114 L.Ed.2d 307 (1991); *see also United States v. Arthur,* 544 F.2d 730, 734–35 (4th Cir.1976) ("Not every gift, favor or contribution to a government or political official constitutes bribery. It is universally recognized that bribery occurs only if the gift is coupled with a particular criminal intent.... That intent is not supplied merely by the fact that the gift was motivated by some generalized hope or expectation of ultimate benefit on the part of the donor.... 'Bribery' imports the notion of some more or less specific *quid pro quo* for which the gift or contribution is offered or accepted." *Id.* at 734 (citations omitted).); *United States v. Vap,* 852 F.2d 1249, 1255 (10th Cir.1988). The ordinance defines its scope even more narrowly, by seeking to regulate only situations in which a person contributes or appears to contribute money not only as a *quid pro quo,* but also for a direct financial benefit.

Although the majority notes that the prevention of corruption is a valid legislative purpose, it then concludes that the ordinance does not serve that purpose. Its reasoning turns on the assumption that the ordinance discriminates between applicants and opponents of a water service application. This assumption is simply wrong.

First, the majority is mistaken in claiming that the ordinance applies only to applicants for water service. The ordinance does not discriminate between applicants and opponents or other non-applicants. The Goleta Water District explained before the district court and this court that the ordinance applies not only to an applicant for a permit, but also to opponents of the application (such as competitors of the applicant) who, by their opposition, seek direct financial gain. The District interprets Section 9.3 of the ordinance to disqualify a Board member from voting on an application for water service whenever the grant or denial of the application would result in a direct financial benefit to a major contributor. The section reads:

9.3 *Other Facts Indicating Financial Interest.*

... Any other such person or entity shall be considered a major political contributor where the facts and circumstances reasonably demonstrate that the campaign contribution was made for the purpose of financial gain and not primarily for purposes of first amendment political expression, speech or association.

It is conceded that Section 9.3 is somewhat ambiguous. Hence, fundamental principles of statutory construction require that this court accord "substantial deference" to the Board's interpretation. *See Public Utility District No. 1. v. Bonneville Power Admin.,* 947 F.2d 386, 390–91 (9th Cir.1991). If the Board fails to apply the section accordingly in a case involving an actual permit application, then a cause of action will lie to challenge the ordinance as applied. But in the instant case, the plaintiff challenges the ordinance merely on its face.

Second, the majority lumps together contributors who have a direct financial stake in an application with contributors who may have an indirect or speculative financial interest as well as those who have nonfinancial interests. The majority argues that the ordinance does not address large, influential contributions from the latter two groups of contributors. While the majority's expansive concern with corruption is laudable, it misses the point. The ordinance's purpose is narrow. It excludes from its scope the protected First Amendment rights of political expression and association, and seeks only to prevent *quid pro quo* arrangements and the appearance of such arrangements by persons who stand to reap direct, concrete, and immediate financial gain from a vote on an application.

## IV

Finally, in affirming the district court's grant of summary judgment, the majority essentially complains that the ordinance fails to infringe on the First Amendment

rights of all contributors. The majority suggests that the ordinance might be constitutional if it mandated a limitation on all contributions. It is ironic that the majority uses the First Amendment to invalidate an ordinance narrowly tailored to avoid touching First Amendment rights, and then turns around and recommends that the ordinance impose a sweeping burden on those same rights.

The Goleta Water District ordinance is narrow in its scope. It only disqualifies a Board member from voting on a particular application in which a major contributor has a direct financial stake. It does not prevent the Board member from voting on any other application or issue that represents the contributor's political interests. Thus, the contributor can contribute as much as he wishes for purposes of political expression and association—for any purpose other than to pay a Board member in exchange for a direct financial favor, or to create the appearance of such conduct.

The Constitution does not protect the right to bribe. *Austin*, 110 S.Ct. at 1397; *Buckley*, 424 U.S. at 26–27, 96 S.Ct. at 638–639. By addressing only bribery situations and leaving untouched the ability to contribute for any other purpose, the ordinance prevents bribery (not protected) and allows contribution for political expression and association (protected).

Today the majority strikes down the ordinance on the ground that the ordinance fails to burden the First Amendment rights of all contributors, including those who do not have a direct financial interest in the grant or denial of water service, such as "persons with environmental rather than economic interests in mind." But to limit the contributions of such persons would be to infringe deeply upon their constitutionally protected freedoms of political expression and association.

### V

In sum, the majority is wrong for three reasons. First, the ordinance burdens no one's First Amendment rights. It merely disqualifies a Board member when a contribution is made, or appears to be made, for the constitutionally unprotected purpose of corruption. Second, the majority incorrectly identifies the scope of the ordinance. The ordinance distinguishes between those who contribute or appear to contribute in exchange for direct financial gain and those who contribute for political expression and association, and regulates only the former. Finally, the majority's recommendation, which would burden the First Amendment rights of all contributors, cannot withstand constitutional analysis.

It is ironic that the majority strikes down constitutionally permitted legislation because the legislature fails to restrict persons in the exercise of their constitutional rights. The majority ignores the distinction between contributions made for political expression and association and *quid pro quo* payments made, in actuality or appearance, solely for the purpose of direct financial gain.

I dissent.