The LINCOLN CLUB OF ORANGE COUNTY, a California non-profit mutual benefit corporation on behalf of itself and its members; the Lincoln Club of Orange County State Pac; The Lincoln Club of Orange County Independent Expenditures Pac, Plaintiffs–Appellants,

v.

CITY OF IRVINE, CALIFORNIA, a Municipal corporation, Defendant–Appellee.

No. 00–56444.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2001.

Filed Dec. 20, 2001.

Amended June 5, 2002.

John C. Eastman, The Claremont Institute Center for Constitutional Jurisprudence, Orange, CA, for the plaintiffs-appellants.

Joel D. Kuperberg, Rutan & Tucker, Costa Mesa, CA, for the defendant-appellee.

Before GOODWIN, WALLACE and THOMAS, Circuit Judges.

## ORDER

The opinion filed December 20, 2001, slip op. 17087, and appearing at 274 F.3d 1262 (9th Cir.2001) is amended as follows:

1. At slip op. 17097–17100, 274 F.3d at 1267–1269: Delete all text beginning with the heading "Application of Strict Scrutiny to Irvine's Ordinance" up to, but not including, the last line of the opinion.

2. At slip op. 17100–17101, 274 F.3d at 1269: Amend last line of opinion to read: "We therefore reverse the judgment of the district court and remand for consideration in light of the appropriate standard of constitutional scrutiny."

With the opinion thus amended, the panel has voted unanimously to deny the petition for rehearing.

## OPINION

GOODWIN, Circuit Judge.

The Lincoln Club of Orange County and its affiliated political action committees ["The Lincoln Club"] brought an action for declaratory and injunctive relief in the district court challenging the constitutionality of section 1–2–404(B) of the City of Irvine's ["Irvine"] Campaign Financing Law. The district court granted Irvine's motion

for summary judgment. The Lincoln Club appeals. We reverse and remand.

## Facts and Procedural History

Section 1-2-404(B) ["the Ordinance"] of Irvine's Campaign Financing Law imposes a maximum limit on the amount of campaign contributions that a person or committee may receive from a single source during an election campaign. The Ordinance provides that:

> Any person, including any committee, that makes any independent expenditure during an election cycle in support of or opposition to any City candidate, shall not accept any contribution(s) from any person which exceeds in the aggregate the amount set forth in this section for that election cycle.

The contribution limit in place for the two-year election cycle ending with the November 2000 election was $320. A person or committee is subject to civil and criminal prosecution for violation of the Ordinance if it accepts during an election cycle contributions from any person that in the aggregate exceed $320, and in the same election cycle makes independent expenditures in support of or in opposition to candidates for office in an Irvine municipal election.

The Lincoln Club is a nonprofit corporation that participates in the electoral process through two affiliated political action committees ["PACs"]: the Lincoln Club of Orange County State PAC and the Lincoln Club of Orange County Independent Expenditures PAC. The Lincoln Club and its affiliated PACs derive their resources from annual membership dues of $2,000 per member. In the November 1998 and 2000 Irvine municipal elections, the Lincoln Club was prohibited from making any independent expenditures in support of or in opposition to candidates because the Lincoln Club's annual dues exceeded the $320 limit imposed by the Ordinance. The Lincoln Club's annual dues are deemed to be "contributions" for purposes of the Ordinance because the dues are paid to political committees that make independent expenditures during political elections.

The Lincoln Club sued Irvine under 42 U.S.C. § 1983 alleging that the Ordinance impermissibly restricted the Lincoln Club's First Amendment rights of free speech and association. The parties executed a Joint Statement of Undisputed Facts and filed cross motions for summary judgment. After a hearing on the parties' cross-motions, the district court granted Irvine's motion for summary judgment. The court refused to apply a strict level of constitutional scrutiny to the Ordinance, concluding that "[p]olitical contributions to independent expenditure committees warrant lesser constitutional protection and therefore lesser constitutional scrutiny than independent expenditures." The district court held that the Ordinance was constitutional because it was closely drawn to further Irvine's sufficiently important interests in avoiding corruption and the appearance of corruption, and preserving the integrity of the electoral system by preventing contributors from circumventing Irvine's comprehensive regulation of campaign contributions.

## Level of Scrutiny

We begin by considering whether the district court erred by failing to apply strict scrutiny to the Ordinance. The seminal Supreme Court case in the realm of campaign finance regulation is *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), where the Court upheld as constitutional the Federal Election Campaign Act's limitations on contributions to candidates and struck down as unconstitutional the Act's limitations on independent expenditures.

Subsequent Supreme Court decisions have construed *Buckley* as requiring strict

scrutiny of limitations on independent expenditures and lesser constitutional scrutiny of limitations on contributions. *See Fed. Election Comm'n v. Colo. Repub. Fed. Campaign Comm.,* 533 U.S. 431, 121 S.Ct. 2351, 2358, 150 L.Ed.2d 461 (2001) (*Colorado II*) (observing that ever since *Buckley* the Court has understood that limits on expenditures deserve closer scrutiny than restrictions on contributions); *Nixon v. Shrink Missouri Gov't PAC,* 528 U.S. 377, 387, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000) (construing *Buckley* as providing that contribution limitations warrant less compelling justification than expenditure limitations); *Fed. Election Comm'n v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 259–60, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986) ("We have consistently held that restrictions on contributions require less compelling justification than restrictions on independent spending"). We have also construed *Buckley* as requiring different levels of constitutional scrutiny for expenditure and contribution limitations. *See VanNatta v. Keisling,* 151 F.3d 1215, 1220 (9th Cir.1998) (stating that "restrictions on contributions ... are subjected to less exacting scrutiny than restrictions on independent expenditures"); *Serv. Employees Int'l Union v. Fair Political Practice Comm'n,* 955 F.2d 1312, 1322 (9th Cir. 1992) (observing that the Supreme Court has applied strict scrutiny in assessing the constitutionality of expenditure limitations but applied a "somewhat less stringent test than strict scrutiny" in assessing constitutionality of contribution limitations).

The Supreme Court has also explained the reasons underlying its disparate treatment of contributions vis-a-vis expenditures. In *Buckley* the Court reasoned that "[a] restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." *Buckley,* 424 U.S. at 19, 96 S.Ct. 612. The Court concluded that expenditure limitations place substantial restraints on both political speech and association.

By contrast, the *Buckley* court found that contribution limitations do not place a substantial restraint on protected political speech and association. Rather, the Court found that "a limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a *marginal restriction* upon the contributor's ability to engage in free communication." *Buckley,* 424 U.S. at 20, 96 S.Ct. 612 (emphasis added). The Court justified its position that contribution limits impose only a marginal restriction on protected speech by reasoning that contributions are merely speech by proxy, and not full-fledged speech: "[w]hile contributions may result in political expression if spent by a candidate or an association to present views to the voters, the transformation of contributions into political debate involves speech by someone other than the contributor." *Buckley,* 424 U.S. at 21, 96 S.Ct. 612.

■ Nearly all of the Supreme Court and Ninth Circuit cases that have considered the constitutionality of contribution limitations, however, have done so in the context of *contributions to candidates:* neither the Supreme Court nor this Court has 8072 squarely confronted a campaign finance law that limits *contributions to independent expenditure committees,* as does Irvine's Ordinance. Although it is clear that expenditure limitations are subject to strict scrutiny and contribution limitations are subject to less than strict scrutiny, our case law has not described the level of scrutiny appropriate for an Ordinance that acts as both an expenditure and a contribution limitation.

### Discussion

■ We begin our inquiry by recognizing that the level of constitutional scrutiny that we apply to a statutory restriction on political speech and associational freedoms is dictated by both the intrinsic strength of, and the magnitude of the burden placed on, the speech and associational freedoms at issue. If the Ordinance places a severe burden on fully protected speech and associational freedoms, we apply strict scrutiny. *See Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.,* 470 U.S. 480, 496, 105 S.Ct. 1459, 84 L.Ed.2d 455 (1985) ("*NCPAC*"); *Buckley,* 424 U.S. at 44–45, 96 S.Ct. 612. If the Ordinance places only a minimal burden on fully protected speech and associational freedoms, or if the speech and associational freedoms are not fully protected under the First Amendment, we apply a lower level of constitutional scrutiny. *See Shrink Missouri,* 528 U.S. at 386–88, 120 S.Ct. 897; *Buckley,* 424 U.S. at 20–21, 25, 96 S.Ct. 612.

■ The Lincoln Club contends that the Ordinance warrants strict scrutiny because, although the Ordinance facially limits only contributions, it has the purpose and effect of barring expenditures by independent expenditure committees. The Lincoln Club further contends that the traditional motivation for lower level scrutiny, i.e., that contributions to candidates are merely speech by proxy of the candidate himself and that contributions to candidates pose the danger of quid pro quo corruption, are not present in the context of contributions to independent expenditure committees.

In response, Irvine contends that the district court properly applied a lower level of constitutional scrutiny here because the challenged Ordinance regulates contributions, not expenditures. Irvine further argues that the distinction between contributions to candidates and contributions to independent expenditure committees is irrelevant to the standard of review. According to Irvine, "it is the nature of the contribution, and not the identity of the recipient, that creates the lower level of review."

Irvine's Ordinance clearly places a limit on contributions to independent expenditure committees. Although such a restriction burdens speech and associational freedoms, under *Buckley* and its progeny such a restriction does not place a severe burden on protected speech and associational freedoms. This is because *Buckley* does not consider political contributions to be fully protected political speech. Under *Buckley,* political contributions are merely speech by proxy because "the transformation of contributions into political debate involves speech by someone other than the contributor." *Buckley,* 424 U.S. at 21, 96 S.Ct. 612. Viewed in the light of the speech by proxy rationale, The Lincoln Club's contributors (i.e., its dues-paying members) are merely engaging in speech by proxy because it is the Lincoln Club, and not the contributors themselves, that transforms the members' contributions into political debate. Since the contributions themselves are not fully-protected political speech under *Buckley* and its progeny, the Ordinance's contribution limit, standing alone, does not warrant strict scrutiny.

However, the Ordinance does not merely restrict contributions. It also restricts expenditures by barring an independent expenditure committee from making any independent expenditures whatsoever if the source of the committee's money is membership dues that exceed the Ordinance's prescribed maximum. This feature of the Ordinance burdens protected speech and associational interests in two important ways. First, if The Lincoln Club maintains its present organizational structure,

it will continue to be precluded from making any political expenditures whatsoever in Irvine municipal elections. Second, if The Lincoln Club chooses to comply with the Ordinance, it will have to make dramatic changes to its organizational structure. In order to comply with the Ordinance, The Lincoln Club would need to reduce its annual dues from $2,000 to $160 (½ of the $320 currently permitted under the Ordinance per 2 year election cycle). If The Lincoln Club were to reduce its annual dues from $2,000 to $160 in order to accommodate the Ordinance's $320 limit, The Lincoln Club would also need to expand its membership from the current level of approximately 300 members to approximately 3,750 members in order to maintain the same funding level that it currently enjoys. The Ordinance's expenditure limitation is a double-edged sword, placing a substantial burden on protected speech (i.e., barring expenditures) while simultaneously threatening to burden associational freedoms (i.e., by requiring a restructuring of The Lincoln Club). We conclude that such substantial burdens on protected speech and associational freedoms necessitate the application of strict scrutiny to the Ordinance.

We therefore reverse the judgment of the district court and remand for consideration in light of the appropriate standard of constitutional scrutiny.

REVERSED and REMANDED.