Joni **WHITMORE** and James Quinlan, on Behalf of Himself and All Other Persons Similarly Situated, Plaintiffs–Appellants,

v.

**FEDERAL ELECTION COMMISSION;** Don Young; Tony Smith; Alaskans for Don Young; Tony Smith for Congress, Defendants–Appellees.

No. 94–36236.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1995.

Decided Oct. 26, 1995.

As Amended Jan. 10, 1996.

Donald Craig Mitchell, Anchorage, Alaska, for plaintiffs-appellants.

Vivien Clair (On the Briefs) and Richard B. Bader (Argued), Federal Election Commission, Washington, DC, for defendants-appellees.

Before: HALL, WIGGINS, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

A third party candidate and a voter sued to obtain a judicial prohibition against contributions from citizens of other states to a congressional campaign. The complaint was properly dismissed for lack of standing. The claim is frivolous as well.

### I. FACTS

Plaintiff Whitmore ran for Congress on a third party ticket, the Green Party, in 1994. She submitted evidence showing that she appeared at numerous locations, got press coverage, spent $22,000 on her campaign, and won 10.2% of the vote. She says that the Republican incumbent, Don Young, and his Democratic challenger, Tony Smith, each accepted donations from non-Alaskans, but she "refused and returned all contributions that [were] made to [her] and her committee by persons who are not residents of the district." The complaint alleges that the Federal Election Campaign Act, 2 U.S.C.

§ 431 et seq. (the "Act"), "authorizes a person who is not a resident of Alaska's at-large congressional election district to make a contribution ... to a candidate seeking election as Alaska's representative in the United States House of Representatives...." She claims that, by authorizing non-Alaskan contributions to Alaska congressional candidates, the Act violates her constitutional rights to free association, equal protection, and a republican form of government.

Plaintiff Quinlan alleges that he is an Alaskan resident and voter who has never made a campaign contribution, and plans none. He makes substantially the same claims as Whitmore.

The claim of injury is basically that out-of-state money helps the Republican and Democratic candidates drown out the campaign of a third party candidate such as Ms. Whitmore. Plaintiffs presented evidence that out-of-state contributors give more money to Democrats and Republicans than to third party candidates. One might speculate that third parties would have some supporters in several states, but majorities in few or none, so would benefit from out-of-state contributions more than Democrats and Republicans, but this factual possibility does not matter to the outcome of this case.

The plaintiffs brought the lawsuit as a class action on behalf of all Alaska voters. No class was certified, and the appeal does not raise any question regarding class certification.

Plaintiffs requested that the district court certify the case to an en banc panel of the Ninth Circuit, pursuant to the dictates of 2 U.S.C. § 437h. The district court declined to certify the case and instead, granted the defendants' motions to dismiss the complaint for lack of standing. Plaintiffs now appeal the determination that they lack standing to bring this suit. They challenge the district court's denial of certification on appeal.

## II. ANALYSIS

■ We review standing *de novo*. *Douglas County v. Babbitt*, 48 F.3d 1495, 1499 (9th Cir.1995).

### A. Jurisdiction

We must first resolve whether the district court had jurisdiction to render a judgment, and whether we do. The Act says "[t]he district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc." 2 U.S.C. § 437h. On its face, the complaint purports to challenge the constitutionality of the Act. The district court did not certify the case, and we are not sitting en banc.

■ Failure to certify was not error, and we need not hear the matter en banc. No such certification should be made if the plaintiff lacks standing or the case is frivolous. The Supreme Court explained that "concerns about potential abuse of § 437h are circumscribed by the constitutional limitations on jurisdiction of federal court." *California Medical Association v. Federal Election Commission*, 453 U.S. 182, 193 n. 14, 101 S.Ct. 2712, 2719 n. 14, 69 L.Ed.2d 567 (1981). "A party seeking to invoke § 437h must have standing to raise the constitutional claim." *Id.; Goland v. United States*, 903 F.2d 1247, 1253 (9th Cir.1990). "[W]e do not construe § 437h to require certification of constitutional claims that are frivolous." *California Medical Association*, 453 U.S. at 193 n. 14, 101 S.Ct. at 2719; *Goland v. United States*, 903 F.2d at 1257.

The district court had jurisdiction to dismiss the case for lack of standing instead of certifying it. We have jurisdiction to review the district court's determination that plaintiffs lack standing to bring this suit. Alternatively and independently, we have jurisdiction to review the district court's determination that frivolousness obviated any need to certify.

### B. Standing

■ The appellants' proposition that the Act "authorizes" out-of-state contributions is incorrect. The Federal Election Campaign Act limits some but not all campaign contributions:

The statutes at issue summarized in broad terms, contain the following provisions: (a) individual political contributions are limited to $1,000 to any single candidate per election, with an overall annual limitation of $25,000 by any contributor; independent expenditures by individuals and groups

'relative to a clearly identified candidate' are limited to $1,000 a year; campaign spending by candidates for various federal offices and spending for national conventions by political parties are subject to prescribed limits; (b) contributions and expenditures above certain threshold levels must be reported and publicly disclosed; (c) a system for public funding of Presidential campaigns is established by Subtitle H of the Internal Revenue Code; and (d) a Federal Election Commission is established to administer and enforce the legislation.

*Buckley v. Valeo,* 424 U.S. 1, 7, 96 S.Ct. 612, 629, 46 L.Ed.2d 659 (1976). The Act neither prohibits nor authorizes out-of-state campaign contributions. The appellants' premise, that what the Act does not prohibit, it authorizes, is foreign to our libertarian tradition. The argument assumes that conduct is restricted except insofar as a statute permits it. The Act restricts certain campaign conduct, but authorizes nothing. Campaign conduct is unrestricted, except to the extent that the law limits it. People do not depend on Congressional "authorization," as plaintiffs assume, for their liberty to express their political preferences.

Since the Act does not "authorize" the contributions, it cannot be the cause of plaintiffs' claimed injuries. The absence of a causal relationship between the Act, which they challenge, and their injury, necessarily deprives both plaintiffs of standing to challenge the Act.

Standing requires a "causal connection between the injury and the conduct complained of":

> [T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as op-

posed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). We need not reach the question of whether plaintiffs could establish either of the other two prerequisites for standing, because the absence of any one element required dismissal. *Snake River Farmers v. Department of Labor,* 9 F.3d 792, 795 (9th Cir.1993).

Ms. Whitmore argues that under *Buckley v. Valeo,* a congressional candidate has a personal stake in the FECA campaign finance system adequate for standing. But that depends on what claim is made. *Buckley* stated that "[i]n our view, the complaint in this case demonstrates that at least some of the appellants have a sufficient 'personal stake' in a determination of the constitutional validity of each of the challenged provisions...." *Buckley,* 424 U.S. at 12, 96 S.Ct. at 631 (emphasis added). That Ms. Whitmore had a stake in the congressional campaign finance laws does not imply that the law caused her injury. The law did not cause the out-of-state contributions which she claims made it harder for her to win.

The harms alleged derive from the acts of other citizens, not from the Act. Plaintiffs have not established a causal relationship between the statute they challenge and the claimed injury, so they have not established standing to challenge the Act. *See Allen v. Wright,* 468 U.S. 737, 758, 104 S.Ct. 3315, 3328, 82 L.Ed.2d 556 (1984); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

### C. Frivolousness

 In addition to a declaratory judgment that the Act was unconstitutional, plaintiffs sought an injunction commanding competing congressional candidates not to accept out-of-state contributions. Plaintiffs argue that their rights to free association, equal protection and a republican form of government entitle them to this relief. They seek a positive injunction enforcing these claimed rights, not just a declaratory judgment that the Act is unconstitutional. The claims are frivolous, so they were properly dismissed. *See Goland v. United States,* 903 F.2d 1247 (9th Cir.1990). "A complaint is frivolous where none of the legal points are arguable on their merits." *Id.* at 1258.

Plaintiffs have, of course, found no published precedent in any judicial decision for their novel propositions. "[C]hallenges to legislation based on the Guarantee Clause are not justiciable." *City of Rome v. United States,* 446 U.S. 156, 182 n. 17, 100 S.Ct. 1548, 1564 n. 17, 64 L.Ed.2d 119 (1980); *Nevada v. Watkins,* 914 F.2d 1545, 1559 (9th Cir.1990). Plaintiffs argue that the Constitution entitles them to representation by someone not beholden to any citizen of another state. They present a historian's affidavit that the Founding Fathers would have been "shocked" at out-of-state contributions to a congressional candidate. Though it can be argued that pure localism affords better representation, one could argue to the contrary that a Representative acts on matters affecting the interests of all Americans, so all Americans should have the right to express themselves on who ought to be a Representative. Neither the Constitution nor the United States Code affords plaintiffs any support for their political theory.

The complaint prays for an injunction prohibiting competing congressional candidates from accepting out-of-state contributions. Plaintiffs do not sue the out-of-state contributors who allegedly caused the injury they complain of. The district court could not, in any event, have granted the injunction sought because it would abridge people's constitutionally protected liberty to contribute to the candidates of their choice. Plaintiffs argue that the weight of in-state opinions should be enhanced, and that of out-of-state opinions reduced, by managing the flow of money.

Such management of the system of political expression may violate the rights of the out-of-state contributors. "Neither the voting rights cases nor the fairness doctrine case support the position that the First Amendment permits Congress to abridge the rights of some persons to engage in political expression in order to enhance the relative voice of other segments of our society." *Buckley,* 424 U.S. at 49 n. 55, 96 S.Ct. at 649 n. 55. "[T]he concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment, which was designed 'to secure the widest possible dissemination of information from diverse and antagonistic sources,' and 'to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Buckley,* 424 U.S. at 48–49, 96 S.Ct. at 649. Plaintiffs seek an unprecedented limitation on constitutionally protected freedom of political expression. Their claim is frivolous. No statute or precedent supports plaintiffs' claims.

AFFIRMED.

### ORDER

Jan. 10, 1996

The opinion filed October 26, 1995, is amended as follows:

Appellants' motion filed November 9, 1995, "Requesting the Court to Withdraw Section II(C) of its Decision" is hereby DENIED.