78 F.3d 66
 Sal F. ALBANESE, Tim Carl, Loretta Carl, Joseph Carolei,
John Castelli, Stephen Clinton, Gregory Glover, Tinamarie
Lambiasi, John O'Donnell, Elaine Polenini, Rochelle Puglisi,
Tobias Russo, Terry Silveira and Victor M. Suarez,
Plaintiffs-Appellants,
v.
FEDERAL ELECTION COMMISSION, Susan Molinari, Committee To
Re-Elect Susan Molinari, Defendants-Appellees.
 No. 667, Docket 95-6099.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 21, 1995.
 Decided March 12, 1996.
 
 John C. Bonifaz, Boston, Massachusetts (Cristobal Bonifaz, Jason Adkins, Jordan Yeager, Boston, Massachusetts, John W. Carroll, Wolfson & Carroll, New York City, Abigail Turner, National Voting Rights Institute, Boston, Massachusetts, on the brief), for Plaintiffs-Appellants.
 Kerry W. Kircher, Washington, D.C. (Cheryl A. Lau, General Counsel, Geraldine R. Gennet, Deputy General Counsel, Michael L. Murray, Senior Assistant Counsel, Barbara K. Bracher, Office of General Counsel, U.S. House of Representatives, Washington, D.C., on the brief), for Defendant-Appellee Susan Molinari.
 Lawrence M. Noble, General Counsel, Federal Election Commission, Washington, D.C. (Richard B. Bader, Associate General Counsel, Vivien Clair, Federal Election Commission, Washington, D.C., of counsel), submitted a brief for Defendant-Appellee Federal Election Commission.
 Cawse & Birmingham, Staten Island, New York (Richard F. Birmingham, Staten Island, New York, of counsel), for Defendant-Appellee Committee to Re-Elect Susan Molinari, joined the briefs of the other Defendants-Appellees.
 Before: KEARSE, MAHONEY, and PARKER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiffs Sal F. Albanese et al. appeal from a judgment of the United States District Court for the Eastern District of New York, I. Leo Glasser, Judge, dismissing their complaint seeking a judgment declaring, inter alia, that their rights under the Equal Protection Clause of the Fourteenth Amendment, as incorporated into the Due Process Clause of the Fifth Amendment, are violated by (a) the solicitation and use of private funds in elections for federal office, as permitted by the Federal Election Campaign Act of 1971, 2 U.S.C. § 431 et seq. (1994) ("FECA"), and (b) the use by incumbent federal candidates of franking privileges, as permitted by 39 U.S.C. § 3210 (1994). The district court dismissed the complaint principally for lack of standing, failure to state a claim on which relief can be granted, and presentation of nonjusticiable political questions. On appeal, plaintiffs challenge these rulings. Finding no error, we affirm.
 
 I. BACKGROUND
 
 2
 The present action was brought to challenge the system by which federal congressional elections are financed. Plaintiffs contend that the present system favors (a) candidates backed by wealthy supporters, and (b) incumbent candidates who have mail franking and other privileges. The facts underlying the action, which according to the district court are not in dispute, are set forth in greater detail in the district court's opinion, reported at 884 F.Supp. 685 (1995), familiarity with which is assumed.
 
 
 3
 Defendant Susan Molinari ("Rep. Molinari") has represented the 13th Congressional District of the State of New York in the United States House of Representatives since 1990. Albanese is a New York City councilman who was the Democratic Party's congressional candidate in the 13th District in 1992; he lost that election to Rep. Molinari. Albanese decided not to run for Congress in 1994 because he believed his inability to raise funds would prevent his meaningful participation in the electoral process. Plaintiff Tim Carl considered running for Congress as an independent candidate in the 13th District in 1992 but chose not to do so because he believed he could not raise sufficient funds to conduct an effective campaign. The other plaintiffs are registered voters residing in the 13th District who supported Albanese in the 1992 election.
 
 
 4
 Through defendant Committee to Re-Elect Susan Molinari, Rep. Molinari raised approximately twice as much money for her 1992 campaign as Albanese did for his. Plaintiffs contended that Rep. Molinari could therefore afford certain campaign tools, such as television advertisements and district-wide mailings, that Albanese could not. In addition, consistent with the applicable statutes and rules, Rep. Molinari used franked mail and her office staff in ways that plaintiffs contended enhanced her campaign.
 
 
 5
 Plaintiffs did not allege any violation of either FECA or the franking statute. Rather, they contended that the present system for the conduct of campaigns for federal primary elections, which they dub "wealth primaries," as well as for federal general elections, violates the constitutional rights of (a) candidates such as Albanese, and would-be candidates such as Carl, who are not incumbents and who lack personal wealth or sufficient affluent backers, and (b) voters who support, or would support, such candidates. Plaintiffs challenged the constitutionality of FECA in that it, inter alia, permits the solicitation and use of private moneys to finance election campaigns, and of 39 U.S.C. § 3210 in that it, inter alia, permits incumbent candidates to use franked mail in ways that enhance their campaigns. They sought a declaratory judgment principally holding the challenged statutes unconstitutional, forbidding the use of private moneys in federal elections, and forbidding the furnishing of politically valuable public subsidies, such as franking, to incumbent candidates unless those subsidies are made equally available to all other candidates.
 
 
 6
 Defendants moved to dismiss the complaint for lack of subject matter jurisdiction, failure to state a claim on which relief can be granted, and lack of standing. The district court granted the motions to dismiss, holding, inter alia, that plaintiffs lack standing to challenge FECA, see 884 F.Supp. at 693; that FECA is constitutional, see id.; that the franking statute is constitutional, see id. at 695; and that the political question doctrine precludes consideration of plaintiffs' challenges to other privileges enjoyed by incumbents, see id. at 693-94. This appeal followed.
 
 II. DISCUSSION
 A. Challenges to FECA
 
 7
 Plaintiffs contend that the district court erred in ruling that they lack standing to challenge the campaign finance system authorized under FECA, arguing, inter alia, that they suffered injury as candidates, would-be candidates, and voters who were excluded from an integral part of the electoral process because they did not have the large sums of money needed to influence the congressional campaign funding process. We conclude that they lack standing to challenge the validity of FECA substantially for the reasons stated in the district court's opinion, see 884 F.Supp. at 688-93.
 
 
 8
 In order to have standing under Article III of the Constitution, a plaintiff must seek redress for an injury that is both "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); see also Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 45-46, 96 S.Ct. 1917, 1927-28, 48 L.Ed.2d 450 (1976); Whitmore v. Federal Election Commission, 68 F.3d 1212, 1215 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1543, --- L.Ed.2d ---- (1996). Plaintiffs have not met these standards.
 
 
 9
 First, the injury they assert is not "fairly traceable" to FECA. FECA does not require that contributions be made to any candidate. Rather, it limits the amounts of contributions that may be made. See 2 U.S.C. § 441a. Hence, any injury claimed by these plaintiffs is not attributable to FECA.
 
 
 10
 Second, plaintiffs have not shown that their claimed injuries are "likely to be redressed by" a declaration that FECA is unconstitutional. Indeed, since FECA limits the amounts of contributions that are permissible, the elimination of those ceilings could well place candidates whose constituencies do not include a plethora of wealthy supporters at an even greater disadvantage. And though FECA by its terms preempts state law "with respect to election to Federal office," 2 U.S.C. § 453; see also Weber v. Heaney, 995 F.2d 872, 873, 875 (8th Cir.1993) (FECA preempts state statute establishing system for federal congressional candidates to agree to limit campaign spending in order to receive state funding), and plaintiffs argue that if the court were to invalidate FECA, individual states would be allowed to pass statutes that would require equal financial support for all legitimate congressional candidates, the complaint provides no basis for inferring any substantial likelihood that the State of New York would pass such legislation.
 
 
 11
 We note that although FECA provides that questions concerning its constitutionality shall be immediately certified to the Court of Appeals for the appropriate circuit, sitting en banc, see 2 U.S.C. § 437h, the district court properly declined to issue such certification in this case because plaintiffs lack standing to bring the challenges to FECA, see California Medical Association v. Federal Election Commission, 453 U.S. 182, 193 n. 14, 101 S.Ct. 2712, 2720 n. 14, 69 L.Ed.2d 567 (1981); Whitmore v. Federal Election Commission, 68 F.3d at 1214.
 
 B. Other Claims
 
 12
 Plaintiffs' other claims include the assertion that the present campaign financing system excludes them from an integral part of the electoral process, thereby depriving them of their equal protection rights as nonwealthy voters; of their First Amendment rights to have their voices heard by having their campaign activities and contributions be effective; and of their Article I rights to have the members of the House of Representatives be "chosen ... by the People." U.S. Const. art. I, § 2. We conclude that these claims were properly dismissed substantially for the reasons stated in the district court's opinion, see 884 F.Supp. at 692-93.
 
 
 13
 Plaintiffs' reliance on cases such as Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), which invalidated racially exclusionary primary election devices, is unpersuasive. Terry, for example, held that the Jaybird Democratic Association's pre-primary endorsement process, which was limited to white voters, unconstitutionally infringed upon the right of African-American citizens to vote. See id. at 469-70, 73 S.Ct. at 813-14. Unlike the plaintiffs in Terry, plaintiffs here are not prevented from voting in any election.
 
 CONCLUSION
 
 14
 We have considered all of plaintiffs' arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.