**Jim SYKES, Plaintiff,**

v.

**FEDERAL ELECTION COMMISSION, et al., Defendants.**

**No. CIV.A. 04–293(EGS).**

United States District Court, District of Columbia.

Sept. 9, 2004.

Donald Craig Mitchell, Anchorage, AK, for Plaintiff.

Benjamin A. Streeter, III, Federal Election Commission, Marc Eric Elias, Perkins Coie, LLP, Howrey, Simon, Arnold & White, LLP, Benjamin Dalrymple Wood, Patton Boggs, LLP, Alan Sutton and Robert James Brookhiser, Jr., Howrey Simon Arnold & White, LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION

SULLIVAN, District Judge.

### I. Introduction

Plaintiff's complaint alleges that provisions of the Federal Election Campaign Act, 2 U.S.C. § 431 *et seq.* (the "Act" or "FECA") "authorize an individual who is not an Alaskan resident to make a campaign contribution (either individually or through a political action committee or senatorial campaign committee) to a candidate seeking election in the November 2, 2004 Alaska general election as Alaska's United States Senator." Compl. ¶ 1. Plaintiff alleges that FECA's authorization of these out-of-state contributions violates his First and Fifth Amendment rights because such interstate contributions result in "excessive expenditures for candidate-voter communication" by plaintiff's opponents which effectively "drown out" plaintiff's communication with Alaska voters and "severely burden the plaintiff's exercise of his right to associate politically with Alaska voters." Compl. ¶ 34.

Plaintiff seeks: (1) the convening of a three-judge court pursuant to § 403 of the Bipartisan Campaign Reform Act and/or certification of questions regarding the constitutionality of the challenged portions of FECA to the United States Court of Appeals for the District of Columbia Circuit, pursuant to 2 U.S.C. § 437(h); (2) a declaratory judgment that the provisions of FECA which "authorize" non-Alaska residents to make campaign contributions to candidates in Alaska's upcoming general election violate plaintiff's First and Fifth Amendment rights; and (3) a preliminary and permanent injunction enjoining defendants in this action and the members of the classes they represent from making campaign contributions to candidates in Alaska's upcoming general election, and directing defendants to seek the return of any contributions already made. Defen-

dants, individually and collectively, have moved to dismiss plaintiff's complaint for lack of standing and frivolousness.

## II. Background

### A. The Parties

Plaintiff Jim Sykes ("plaintiff" or "Sykes") is a founding member of the Green Party of Alaska, an officially recognized political party in the State of Alaska. Plaintiff ran unopposed in the August 24, 2004, Alaska primary election for nomination as the Green Party's candidate for election to the United States Senate. Plaintiff's name will appear on the November 2, 2004, Alaska general election ballot. Compl. ¶ 5. Plaintiff's principal opponents in the upcoming election are Lisa Murkowski, the nominee of the Alaska Republican Party, and Tony Knowles, the nominee of the Alaska Democratic Party. *See* Compl. ¶¶ 7–8; Pl.'s Opp. to FEC's Mot. at 1.

Defendant Federal Election Commission ("FEC") is the federal agency, established by Congress, with exclusive jurisdiction to administer, interpret, and enforce the Federal Election Campaign Act of 1971, 2 U.S.C. §§ 431–55 (the "Act" or "FECA"). *See* 2 U.S.C. § 437c (creating the FEC and outlining its structure and purpose); Compl. ¶ 6.

Defendants National Republican Senatorial Committee ("NRSC") and Democratic Senatorial Campaign Committee ("DSCC") are committees established, pursuant to FECA, by the National Republican Party and National Democratic Party, respectively, to provide support to each party's candidates seeking election to the United States Senate. Very few individual contributors to NRSC or DSCC are Alaska residents. To date, NRSC has contributed $17,500 to the election campaign of Lisa Murkowski and DSCC has contributed $11,910 to the election campaign of Tony Knowles. Compl. ¶¶ 11–12.

Defendant Haliburton Company Political Action Committee is a political action committee organized pursuant to FECA though which Haliburton Corporation employees may pool resources and make campaign contributions to candidates they seek to support. No Haliburton employee is a resident of Alaska. To date, HCPAC has contributed $3,000 to Murkowski's campaign. Compl. ¶ 9.

Defendant Waste Management Employees' Better Government Fund is a political action committee organized pursuant to FECA though which Waste Management Company employees may pool resources and make campaign contributions to candidates they seek to support. No WMC employee is a resident of Alaska. To date, WMEBGF has contributed $1,500 to each of Murkowski's and Knowles' campaigns. Compl. ¶ 10.

Defendant Jack Valenti is chairman, CEO, and registered lobbyist of the Motion Picture Association of America (MPAA). Valenti has contributed $1,000 to Murkowski's election campaign. Valenti is not a resident of Alaska and may not vote in Alaska. Compl. ¶ 7.

Defendant Michael Berman is a partner in The Duberstein Group, a Washington, DC lobbying firm. Berman has contributed $2,000 to Knowles' election campaign. Berman is not an Alaskan resident and may not vote in Alaska. Compl. ¶ 8.

### B. The Federal Election Campaign Act

The Federal Election Campaign Act, as amended most recently by the Bipartisan Campaign Reform Act ("BCRA"), limits and regulates campaign contributions made by individuals and political committees to candidates seeking Federal Office. *See* 2 U.S.C. § 441a. Under the limits of FECA, individuals can contribute no more than $2,000 to a single candidate, $5,000 to

political action committees, and $25,000 to a political committee established by a national political party (e.g. DSCC and NRSC). §§ 441a(a)(1)(A)-(C). Political committees, under FECA, may contribute up to $5,000 to a single candidate. § 441a(a)(2)(A). In turn, national political party committees may contribute up to $35,000 to a single senatorial candidate. § 441a(h).

FECA does not prohibit the giving or receipt of out-of-state campaign contributions. FECA does not even mention out-of-state campaign contributions. FECA does, however, specifically prohibit campaign contributions from various other sources. *See, e.g.,* § 441b (prohibiting and/or regulating campaign contributions from national banks, corporations, and labor organizations); § 441e (prohibiting contributions from foreign nationals who are not lawfully admitted for permanent residence); *see also* Compl. ¶ 24.

FECA defines a campaign "contribution" as "any gift … made … for the purpose of influencing an election." 2 U.S.C. § 431(8)(A). Campaign contributions are used by candidates to facilitate candidate-voter communication (e.g. TV commercials, mailings, etc.).

## C. Out-of-State Campaign Contributions

Both Murkowski and Knowles have received and accepted campaign contributions from out-of-state donors. Compl. ¶ 31. As of the date of plaintiff's suit, Murkowski has received $554,200 in individual contributions from non-Alaska residents (including defendant Valenti), $662,841 from political action committees (including defendants Haliburton Company Political Action Committee and Waste Management Employees' Better Govern-

ment Fund), $28,450 from Republican Party committees (including defendant NRSC), and $401,819 in individual contributions from Alaska residents. Knowles has received $100,050 from non-Alaska residents (including defendant Berman), $138,977 from political action committees (including Waste Management Employees' Better Government Fund), $34,000 from Democratic Party committees (including DSCC), and $182,703 from Alaska residents.

Plaintiff has not accepted any out-of-state contributions. Plaintiff intends to receive $500,000 in campaign contributions from Alaska residents.[1] Plaintiff claims that "even if he solicited them," he would receive few, if any, contributions from defendants Valenti and Berman or other non-Alaska residents, no contributions from HCPAC and WMEBGF or other political action committees, and no contributions from defendants DSCC and NRSC. *See* Compl. ¶ 32.

## III. Standard of Review

When considering a Motion to Dismiss, the Court construes the facts in the complaint as true and construes all reasonable inferences in the light most favorable to the plaintiff. *See Swierkiewicz v. Sorema,* 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). A Motion to Dismiss is granted and the complaint dismissed only if no relief could be granted on those facts. *See Sparrow v. United Air Lines Inc.,* 216 F.3d 1111, 1114 (D.C.Cir.2000) (stating that complaints "need not plead law or match facts to every element of a legal theory") (quoting *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C.Cir.2000)).

---

1. Plaintiff provides no evidence of the amount of contributions already received. However, defendant FEC contends that "more than one month" after filing suit, plaintiff had only accumulated a total of $5,480 in campaign contributions. *See* FEC's Reply at 2 n. 1.

## IV. Discussion

Plaintiff's basic claim is that FECA authorizes out-of-state campaign contributions which help Republican and Democratic senatorial candidates in Alaska to "drown out" the campaign of third-party candidates like plaintiff. Plaintiff alleges that defendant FEC's authorization of these out-of-state campaign contributions and the other defendants' making of those contributions is "inflicting an actual, imminent, concrete, and particularized injury on ... [plaintiff's] legally cognizable interest in having a fair opportunity to compete" in the November 2, 2004, Alaska general election. Pl.'s Opp. to FEC's Mot. at 10–11; see Compl. ¶¶ 33–34. Plaintiff seeks declaratory and injunctive relief applicable to all out-of-state contributors.[2] Defendants[3] move to dismiss plaintiff's entire complaint, arguing (1) plaintiff lacks standing to bring the claim; (2) plaintiff's claim is frivolous; and (3) this Court need not certify plaintiff's questions to the Court of Appeals, pursuant to 2 U.S.C. § 437h, because plaintiff lacks standing and/or brings a frivolous claim.

### A. Plaintiff Is Unable to Establish Standing

Plaintiff lacks Article III standing to bring suit. In order to invoke federal jurisdiction in this Court, plaintiff bears the burden of establishing the three elements that constitute the "irreducible constitutional minimum" of standing:

First, a plaintiff must demonstrate an 'injury in fact, which is 'concrete,' 'distinct and palpable,' and 'actual or imminent.' ... Second, a plaintiff must establish 'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant[s], and not the result of some third party not before the court.' ... Third, a plaintiff must show the 'substantial likelihood' that the requested relief will remedy the alleged injury in fact.

*McConnell v. FEC*, 540 U.S. 93, 124 S.Ct. 619, 707, 157 L.Ed.2d 491 (2003) (citations omitted); see *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Plaintiff is unable to establish *any* of the three requirements for standing.

### 1. No Injury in Fact

Plaintiff has not established an injury in fact. "[A]n 'injury in fact' [is] an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (citations omitted) (emphasis added); see *McConnell*, 124 S.Ct. at 708 ("[T]o satisfy our standing requirements, a plaintiff's alleged injury must be an invasion of a concrete and particularized legally protected interest."). Plaintiff claims out-of-state campaign contributions

2. Plaintiff requests that the Court certify his claim as a class action, with defendants Valenti and Berman representing all non-Alaskan individual contributors to an Alaskan candidate for Senate and defendants Haliburton Company Political Action Committee and Waste Management Employees' Better Government Fund representing all other political action committee contributors to an Alaskan senatorial candidate. Plaintiff cites no authority supporting the creation of defendant classes.

3. Defendant FEC filed a motion to dismiss on April 30, 2004. Defendants Berman, Valenti, and DSCC filed a joint motion to dismiss on May 19, 2004. Defendant NRSC filed a separate motion to dismiss on May 19, 2004. Defendants Haliburton Company Political Action Committee and Waste Management Employees' Better Government Fund filed a joint motion to dismiss on May 20, 2004. Because all defendants incorporate FEC's motion into their own motions, at this juncture, it is unnecessary to examine each party's motion independently.

and FECA's "authorization" of such contributions constitute a particularized and ongoing injury to his "legally cognizable interest in having a fair opportunity to compete in the 2004 Alaska Senate election." Pl.'s Opp. to FEC's Mot. at 10. The crux of plaintiff's claim is that out-of-state contributions enable his opponents to purchase more "candidate-voter communication," which effectively "drowns out" plaintiff's own communication with voters and decreases his chances of prevailing at the election. A prohibition on out-of-state contributions, plaintiff argues, will reduce the funds available to facilitate the speech of his opponents and thereby enhance the effect of his own speech, and afford him "a fair opportunity to compete."

Plaintiff cites no authority to support his claim of a legally protected interest in either restricting the spending of candidates for election or in preventing individuals or committees from contributing to the candidates of their choice. Instead, plaintiff relies on *Federal Election Commission v. Massachusetts Citizens for Life, Inc.* ("*Mass.Citizens*") to argue that because the "availability of funds is a rough barometer of public support," the impact of out-of-state contributions will mislead Alaskan voters into thinking plaintiff's opponents have more support than he does. 479 U.S. 238, 257, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986); *see* Pl.'s Opp. to FEC's Mot. at 13–14. However, the Court in *Mass. Citizens* did not declare that this negative impact of campaign contributions constitutes an injury for purposes of standing. Rather, the plaintiff in *Mass. Citizens* had standing to challenge FECA because it was a corporation that suffered direct injury to its First Amendment rights due to FECA's prohibition of campaign contributions made by corporations. The Court referred to the potential impact of campaign contributions only in its discussion of whether a legitimate governmental interest, as opposed to individual interest, existed to justify the injurious prohibition on speech. *Id.* As such, *Mass. Citizens* is inapposite to the present case because plaintiff does not challenge any provision of FECA which *directly* restricts his own activity.

Plaintiff also cites to *McConnell* and *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), for the proposition that candidates for elective office have standing to challenge FECA. However, plaintiff's reliance on *McConnell* and *Buckley* is misguided. Like the plaintiff in *Mass. Citizens,* Buckley challenged portions of FECA which *directly restricted* his own campaign activity, as opposed to plaintiff's claim of indirect impact on his campaign by FECA's *failure to restrict* out-of-state contributions. *See Buckley,* 424 U.S. at 45–58, 96 S.Ct. 612 (invalidating a variety of expenditure ceilings of FECA which directly restricted the amount a candidate could spend on her campaign). Furthermore, in *McConnell,* the Supreme Court specifically held that McConnell and other candidates lacked standing to challenge certain provisions of FECA that did not imminently restrict their own activities. *See McConnell,* 124 S.Ct. at 707–09. As such, plaintiff's argument that any candidate for election automatically has standing to challenge FECA is unsupported by precedent and unpersuasive. *Cf. Whitmore v. FEC,* 68 F.3d 1212, 1215 (9th Cir.1995) (holding that whether a congressional candidate has standing to challenge FECA "depends on what claim is made").

Plaintiff's only alleged injury is his inability to compete equally against opponents with more money (some of which was obtained from out-of-state contributions). Plaintiff cites no authority holding that such a disparity in campaign resources constitutes an injury in fact. Furthermore, as defendants correctly assert, Supreme Court precedent plainly foreclose

plaintiff's argument. In *McConnell,* the Court addressed this very issue, noting "that 'political free trade does not necessarily require that all who participate in the political marketplace do so with exactly equal resources.'" 124 S.Ct. at 708 (quoting *Mass. Citizens,* 479 U.S. at 257, 107 S.Ct. 616); *see also Buckley,* 424 U.S. at 48, 96 S.Ct. 612 (rejecting the asserted governmental interest of "equalizing the relative ability of individuals and groups to influence the outcome of elections" to justify regulation of campaign spending). Unable to cite any supporting precedent or to refute the apparently contrary views of the Supreme Court, plaintiff is unable to establish that the disparity in campaign resources caused by out-of-state contributions constitutes an injury in fact sufficient for standing.

*2. No Causal Connection Between the Act and Plaintiff's Alleged Injury*

Plaintiff is unable to show his alleged injury "is fairly ... trace[able] to the challenged action of the defendant[s], and not ... th[e] result [of] independent action of some third party not before the court." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). "[P]laintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else.*" *Id.* at 562, 112 S.Ct. 2130 (emphasis in original). "Standing is not precluded [in such a situation], but it is ordinarily 'substantially more difficult' to establish." *Id.* Here, plaintiff is unable to meet his difficult burden.

Plaintiff attempts to establish the requisite causal connection by arguing that FECA "authorizes" out-of-state contributions and, therefore, "causes" the injurious disparity in campaign resources. However, FECA is silent on the subject of out-of-state contributions and can only be interpreted to "authorize" such contributions insofar as it does not prohibit them. Plaintiff's argument that whatever FECA does not prohibit, it authorizes, is unpersuasive and has been squarely rejected by at least two circuit courts.

In *Whitmore v. Federal Election Commission,* a case involving a strikingly similar challenge made by an Alaska Green party candidate for the House of Representatives, the Ninth Circuit held that because FECA "neither prohibits nor authorizes out-of-state contributions.... it cannot be the cause of plaintiffs' claimed injuries." 68 F.3d 1212, 1215 (9th Cir. 1995), *cert. denied,* 517 U.S. 1155, 116 S.Ct. 1543, 134 L.Ed.2d 646 (1996). In *Albanese v. Federal Election Commission,* the Second Circuit rejected a similar claim that FECA's campaign finance system excluded plaintiffs from the electoral process because they did not have adequate funds to effectively participate. 78 F.3d 66, 68 (2d Cir.1996), *cert. denied,* 519 U.S. 819, 117 S.Ct. 73, 136 L.Ed.2d 33 (1996). The court in *Albanese* held that because "FECA does not require that contributions be made to any candidate," but only "limits the amounts of contributions that may be made, ... any injury claimed ... is not attributable to FECA." *Id.*

Plaintiff attempts to distinguish *Whitmore* and *Albanese* by noting that in those cases plaintiffs sued the FEC and their political opponents, but not the actual out-of-state contributors. In the present case, plaintiff has joined the actual contributors in an attempt to avoid the virtually fatal precedent of *Whitmore* and *Albanese.* However, plaintiff's argument draws a distinction without a difference. Standing was not lacking in *Whitmore* and *Albanese* because the campaign contributors were not joined, it was lacking because the challenged statute did not cause the alleged injury. Plaintiff is not arguing that the

named defendant contributors are properly before the court because *they violated the law.* Rather, plaintiff claims that *the law itself is unconstitutional.* The present case does not ask whether plaintiff has standing to sue the named contributors, but only whether he has standing to challenge the constitutionality of FECA. As such, the analyses of *Whitmore* and *Albanese* remains informative.

Unable to successfully distinguish the facts or holdings of *Whitmore* or *Albanese,* plaintiff is forced to rely on his declaration that the *Whitmore* "panel's decision reflected ideology, rather than analysis." Pl.'s Opp. to FEC's Mot. at 15. In support of this assertion, plaintiff provides a lengthy history of campaign finance law and a detailed examination of the language and legislative history of FECA in an effort to demonstrate a Congressional intent to authorize out-of-state contributions to federal candidates in FECA. *See* Pl.'s Opp. to FEC's Mot. at 15–26. Plaintiff offers a virtually word-by-word analysis of FECA, but is able to identify *no language* that approves of (or even mentions) contributions across state lines. *See* FEC's Reply at 4 n. 4. Furthermore, the majority of the language in the portions of FECA plaintiff challenges is *restrictive, not permissive. See, e.g.,* 2 U.S.C. § 441a(a)(1) ("*No* person *shall* make contributions . . . which, in the aggregate, exceed $2000") (emphasis added); § 441a(a)(2) ("*No* multicandidate political committee *shall* make contributions . . . which, in the aggregate, exceed $5000") (emphasis added).

The crux of plaintiff's argument that FECA "authorizes" out-of-state contributions focuses on the language in § 441a(h) which states "amounts totaling not more than $35,000 *may be contributed* . . . by the national committee of a political party." Plaintiff argues that the language "may be contributed" indicates an intent to authorize such contributions. Plaintiff asserts that this intent should control interpretation of the entire statute and any apparently restrictive language in other portions of the Act is the result of bad drafting, not congressional intent. *See* Pl.'s Opp. to FEC's Mot. at 18–19. Plaintiffs argument is ultimately unpersuasive. As noted above, two circuit courts have squarely held that FECA "restricts certain campaign conduct, but authorizes nothing." *Whitmore,* 68 F.3d at 1215; *accord Albanese,* 78 F.3d at 68. Furthermore, the title of the FECA section challenged by plaintiff is "Limitations on contributions and expenditures," clearly indicating the intent of the Act is to restrict, not authorize, campaign contributions. *See* 2 U.S.C. § 441a. In addition, FECA makes no mention whatsoever of contributions across state lines. As such, even if some of the language used in FECA can be said to "authorize" particular campaign contributions, no language exists which can be read to authorize the interstate campaign contributions plaintiff challenges.

Regardless, plaintiff fails to establish the requisite causal connection between this "authorization" and his alleged injury because the actual activity which allegedly caused plaintiff's injury, out-of-state donors making contributions, could have occurred regardless of FECA authorization. "[A] federal court may find that a party has standing to challenge governmental action that permits or authorizes third-party conduct that would otherwise be illegal in the absence of the Government's action." *National Wrestling Coaches Assn. v. Dept. of Education,* 366 F.3d 930, 940 (D.C.Cir.2004). Here, plaintiff concedes that, prior to enactment of federal campaign legislation, no restrictions were placed on campaign contributions. *See* Pl.'s Opp. to FEC's Mot. at 20. Accordingly, in the absence of FECA, out-of-state contributions would be equally permissible. As such, FECA's failure to restrict out-of-

state contributions did not "authorize" an activity[4] which would otherwise be illegal, and therefore FECA cannot be deemed to have "caused" plaintiff's injury.

Finally, plaintiff is unable to distinguish his causal connection argument from a theory previously rejected by the Supreme Court. In *McConnell*, the plaintiffs-candidates claimed to have suffered a competitive injury because they were put at a "fundraising disadvantage" because they "[did] not wish to solicit or accept large campaign contributions permitted by" federal campaign finance legislation. *McConnell*, 124 S.Ct. at 709. The Supreme Court rejected the argument that the increased contribution limits, which allowed the plaintiffs' opponents to raise more money, diminished the plaintiffs' "ability to compete or participate in the electoral process." *Id.* Plaintiff's causation argument in the present case is indistinguishable from that rejected in *McConnell* and, therefore, fails for the same reasons. Plaintiff simply cannot establish the requisite causal connection to establish standing. FECA "did not cause the out-of-state contributions which [he] claims [make] it harder for [him] to win." *Whitmore*, 68 F.3d at 1215. Rather, plaintiff's "alleged inability to compete stems not from the operation of [the Act], but from [his] own personal 'wish' not to solicit or accept [out-of-state] contributions, i.e. [his] personal choice. Accordingly, the [plaintiff] fail[s] here to allege an injury in fact that is 'fairly traceable' to [FECA]." *McConnell*, 124 S.Ct. at 709. As such, plaintiff is unable to establish a causal connection between his alleged injury and the challenged provisions of FECA.

### 3. Plaintiff's Alleged Injury is Not Likely to be Redressed by a Favorable Decision

Plaintiff has not demonstrated that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'" by the Court. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (quoting *Simon*, 426 U.S. at 38, 43, 96 S.Ct. 1917). Plaintiff seeks a declaratory judgment that the portions of FECA which authorize interstate campaign contributions, by not prohibiting them, are unconstitutional. In addition, plaintiff seeks both a preliminary and permanent injunction enjoining the individual and committee defendants and the "classes" they represent from making contributions to candidates in Alaska's general election and to seek the return of any contributions already given. Neither of these remedies will redress plaintiff's alleged injury.

A declaratory judgment that portions of FECA are unconstitutional would do nothing to ensure that plaintiff has "a fair opportunity to compete" in the upcoming election or to remedy the alleged inequalities in "candidate-voter communication" that have already occurred. Plaintiff does not enumerate how a declaratory judgment will relieve any competitive disadvantage. In fact, plaintiff acknowledges that "if such a judgment is entered, Congress can do with that information what it wishes, *including doing nothing*." Pl.'s Opp. to FEC's Mot. at 32 (emphasis in original). This admission suggests that a declaratory judgment may have no effect on plaintiff's situation and therefore will not "redress" plaintiff's alleged injury. *See id.* In fact, declaring FECA unconsti-

---

**4.** It is worth noting that it appears as though plaintiff's actual complaint is not that his opponents receive out-of-state contributions, but that they will spend them. Presumably, if plaintiff's opponents were simply collecting out-of-state funds, but not using them to facil- itate candidate-voter communication, plaintiff could allege no injury at all and certainly no injury attributable to FECA. However, plaintiff's opponents, despite being the true source of plaintiff's injury, are not parties to this suit.

tutional may actually aggravate plaintiff's alleged injury. "[S]ince FECA limits the amounts of contributions that are permissible, the elimination of those ceilings could well place candidates whose constituencies do not include a plethora of wealthy supporters at an even greater disadvantage." *Albanese*, 78 F.3d at 69. In other words, the effect of declaring FECA unconstitutional would not make interstate campaign contributions illegal, but would only render FECA's regulation of campaign contributions unlawful. As such, defendants would remain free to contribute to plaintiff's opponents, but would no longer have to abide by FECA's contribution limits. Thus, a declaratory judgment is not "likely" to remedy plaintiff's claimed injury.

With respect to plaintiff's request for an injunction, the Court is without power to grant the relief requested. Even assuming this Court were willing to declare the challenged portions of FECA unconstitutional, this decision does not create a prohibition on interstate campaign contributions. As noted above, declaring FECA unconstitutional would simply remove the limits currently placed on campaign contributions and return campaign finance to its nascent unregulated state, freeing defendants and everyone else to contribute unlimited amounts of money to any candidate of their choice. Yet, plaintiff asks this Court to use its injunctive powers to fill this legislative void by effectively legislating. Plaintiff cites no authority affording this Court such expansive authority. While this Court has the power to interpret the Constitution and declare an existing law unconstitutional, it does not have the power to create new laws. "The proper institution for consideration of electoral reform to alleviate disparity [in campaign resources] is the legislature, not the judiciary." *Kaplan v. County of Los Angeles*, 894 F.2d 1076, 1082 (9th Cir.1990), *cert denied*, 496 U.S. 907, 110 S.Ct. 2590, 110

L.Ed.2d 271 (1990). In short, this Court is simply without power to prohibit interstate campaign contributions by means of an injunction.

In addition to the concern of usurping the constitutional power of the legislative branch, granting the injunctive relief sought by plaintiff would impermissibly "abridge people's constitutionally protected liberty to contribute to the candidates of their choice." *Whitmore*, 68 F.3d at 1216. "Neither the voting rights cases nor the fairness doctrine cases support the position that the First Amendment permits [the Court] to abridge the rights of some persons to engage in political expression in order to enhance the relative voice of other segments of our society." *Buckley*, 424 U.S. at 49 n. 55, 96 S.Ct. 612. In effect, plaintiff seeks an unprecedented limitation on constitutional freedom in order to enforce a law prohibiting interstate campaign contributions that does not yet exist. To the extent plaintiff is arguing that the Constitution itself prohibits interstate campaign contributions by private individuals and entities, plaintiff cites no language in the Constitution which supports his theory and offers no argument why his alleged constitutional right to prevent his political opponents from accepting interstate campaign contributions would trump the constitutional rights of everyone else to freely participate in the electoral process.

In sum, plaintiff is unable to establish that this Court has the power to issue the injunctive relief he seeks. Further, even if the Court did possess this power, strong constitutional and prudential interests caution against such a far-reaching and unprecedented remedy. Finally, even if the Court were inclined to grant injunctive relief, it would not remedy the alleged injury already incurred by plaintiff as the result of interstate campaign contributions

already spent. As such, plaintiff is unable to establish that either a declaratory judgment or injunctive relief are likely to remedy his alleged injury.

### B. Plaintiff's Claim May Be Frivolous

Defendants also allege that plaintiff's claim is frivolous because he "provides no arguable legal basis for the substance of his claim that § 441a of FECA is unconstitutional because it does not prohibit contributions across state lines." FEC's Reply at 9. In *Whitmore*, a case remarkably similar to the present case, the Ninth Circuit held that a Green Party candidate's challenge to out-of-state contributions and request for injunctive relief prohibiting such contributions was frivolous because plaintiffs provided "no published precedent in any judicial decision [to support] their novel propositions." 68 F.3d at 1216. As shown above, the present case is nearly impossible to distinguish from *Whitmore*, and the Ninth Circuit's holding of frivolousness is persuasive. However, in the present case, plaintiff has provided additional theories and named different types of defendants in what may well be a good faith effort to present a viable claim. As such, and because the case will be dismissed for lack of standing regardless, it is not necessary for this Court to decide whether plaintiff's claim is frivolous as well.

### C. This Court Has Jurisdiction To Dismiss Plaintiff's Claim

Plaintiff asks this Court to convene a three-judge panel or to certify his constitutional questions to the United States Court of Appeals for the District of Columbia Circuit. Section 437h of FECA states: "The district court immediately shall certify all questions of constitutionality of this Act [FECA] to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc." 2 U.S.C.

§ 437h. However, "[n]o such certification should be made if the plaintiff lacks standing or the case is frivolous." *Whitmore*, 68 F.3d at 1214; *see Calif. Med. Ass'n v. FEC*, 453 U.S. 182, 193 n. 14, 101 S.Ct. 2712, 69 L.Ed.2d 567 (1981) ("A party seeking to invoke § 437h must have standing to raise the constitutional claim.... We do not construe § 437h to require certification of constitutional claims that are frivolous."). Because plaintiff is unable to establish standing and his claim may well be frivolous, this Court has proper jurisdiction to dismiss the complaint and need not certify plaintiff's questions to the Court of Appeals. *Whitmore*, 68 F.3d at 1214.

### V. CONCLUSION

Upon consideration of the Motions to Dismiss, the Response, the Replies thereto, the governing statutory and case law, and for all the reasons stated herein, Defendant FEC's motion to dismiss shall be **GRANTED**. To the extent that other defendants' motions to dismiss join in Defendant FEC's motion, those Motions to Dismiss shall be **GRANTED** as well. The Court need not reach the remaining arguments advanced by defendants. Plaintiff's claim shall be dismissed in its entirety, and there is no need to either convene a three-judge panel or to certify plaintiff's questions to the Court of Appeals.

An appropriate Order and Judgment accompanies this Memorandums Opinion.